Shrewsbury
*v.*
Salem.

## HENRY COVERDALE *versus* SARAH ALDRICH, Administratrix.

Where property attached in the hands of trustees, was assigned by the owner, and
the attachment was afterwards dissolved by his death and the grant of letters of
administration, it was *held*, that the assignee, and not the administrator, was enti-
tled to the property.

Where real estate was placed in the hands of a trustee, to be conveyed to T.'s ap-
pointee, or in failure of an appointment, to her heirs at law, and she died without
making an appointment, it was *held*, that as she had no legal title to the property,
it could not be sold in the ordinary course of administration, under a license, for
the payment of her debts.

An heir of T. having made a general assignment, for the benefit of his creditors, of
all his lands, tenements and hereditaments, goods and chattels, &c. and all his
right, title and interest in and to the same, it was *held*, that his share in the real
estate in the hands of such trustee, passed by the assignment.

THIS was an appeal from a decree of the Probate Court,
allowing the respondent's account of her administration of the
estate of Allen Aldrich, deceased.

It was agreed to submit the case to the determination of the
Court, upon a statement of facts.

1. Coverdale, in the lifetime of Allen Aldrich, to wit, on
the 24th of January, 1834, sued out a writ of foreign attach-
ment against A. Aldrich, as principal defendant, and W. Far-
num and others, as trustees, which was duly served on the
same day upon the trustees ; who had in their hands, liable to
the attachment, credits of A. Aldrich to the amount of $260.
After the death of A. Aldrich, to wit, at April term 1835,
Coverdale recovered judgment against the goods and estate of
A. Aldrich in the hands of his administratrix, for the sum of

$143·62, debt, and costs of suit, taxed at $54·60. The respondent, as administratrix, had represented the estate insolvent and a commission of insolvency had been issued ; which facts were suggested upon the record in Coverdale's action, and thereupon execution was stayed till the further order of court.

On the 29th of January, 1834, A. Aldrich assigned his real and personal estate, including the credits attached in the hands of the trustees above mentioned, to A. Wilder and D. W. Allen, in trust, for the benefit of his creditors. The deed of assignment provides, that the assignee shall apply the property assigned, " first, to satisfy and pay unto Seneca Hills, a deputy sheriff, &c. or any other deputy sheriff, &c. all claims or incumbrances he or they may have upon any of the real or personal estate, effects or credits, in the schedule hereunto annexed, by virtue of any attachment &c. upon said property." Hills served the writ of foreign attachment sued out by Coverdale. At the September term 1835, of this Court, on a bill in equity brought by Hills and Coverdale against Wilder and Allen to enforce the above trust, it was decreed, that by virtue of the assignment the assignees should pay the debt for which Coverdale had recovered judgment, and so much of the cost as had accrued at the time when the assignment was made , which was accordingly done ; thereby leaving the residue of the costs, to wit, $50·02 unsatisfied. And this sum was allowed by the commissioners on A. Aldrich's estate, as a just claim against his estate.

The property assigned, including the credits of A. Aldrich in the hands of his trustees, which were collected by the assignees, was not sufficient to pay all the creditors of A. Aldrich who were entitled to the benefit of the assignment. The administratrix has not received, accounted for or charged herself with any part of the credits attached as above, or hereafter mentioned.

2. A. Aldrich administered upon the estate of his mother, Tamar Aldrich, and in settling his administration account, in May 1833, it appeared that he had exhausted all the personal assets of his intestate in the payment of debts and charges, and that there was a balance due to him from her estate, amounting

to $ 32·64 ; which was a debt contracted by her after she had lowed alimony, by a decree of this Court. Tamar left no other estate not administered upon, from which A. Aldrich, or his administratrix, could obtain payment of that balance, unless the real estate hereafter mentioned is liable to be sold for that purpose, or the estate of her husband, E. Aldrich, is liable for the same.

Coverdale
v.
Aldrich.

3. A parcel of land was purchased and paid for by Tamar Aldrich in 1831, and at her request and with the consent of her husband, was conveyed to W. S. Hastings, Esquire ; who thereupon promised Tamar, in writing, to convey all his right, title and interest in the land to such person as she should in writing appoint, and in case she should die without making such appointment, then to her legal heirs. She died in 1832, without having made any such appointment, leaving a husband, a son (Allen Aldrich) and two daughters surviving. Mr. Hastings has always been and still is ready to convey his right, title and interest in the land to the persons who may be entitled to it, but a third part of it is claimed by different persons, to wit, by the heirs of A. Aldrich, being the grandchildren of Tamar, by the assignees of A. Aldrich under his deed of assignment, and by his creditors, Coverdale and others, through the respondent his administratrix.

If the Court should be of opinion that the administratrix of A. Aldrich, and not his assignees, is entitled to the credits attached in the hands of his trustees, on the dissolution of the attachment by his death, or that the administrator of Tamar, or the administratrix of A. Aldrich, can sell any part of the real estate held by Mr. Hastings, either for the payment of the balance due from Tamar's estate to A. Aldrich's estate, or for the payment of the creditors of A. Aldrich's estate, or that that amount should be charged in the respondent's administration account, then such further proceedings are to be had as the case may require.

S. *Allen*, for the appellant.

*W. S. Hastings*, for the appellee.

*Oct. 12th, 1836.*

Shaw C. J. Upon the first point discussed in this case, the Court are of opinion, that upon the dissolution of the at-

*April term, 1838.*

tachment, made by the plaintiff, upon the property of Allen Aldrich, in the hands of his trustees, by his death, and the grant of letters of administration, the choses in action in the hands of the trustees vested, by the assignment of Aldrich, in the assignees, for the use of his creditors. It is conceded that by force of this assignment, the assignees became entitled to these choses in action, and had full power and authority to collect them and apply the proceeds to the payment of the creditors, so far as Allen Aldrich, the general owner, could give it to them. But he could not defeat the lien created by the plaintiff's previous attachment. Subject to that lien, however, the transfer and assignment was good and effectual. But when the lien was dissolved and discharged, by the operation of the statute, on the death of the debtor, the assignment remained to have its full effect. But the appellant relies, for a different construction, upon the express words of the statute. *St.* 1822, c. 93, § 6. This provides, after declaring the attachment in such case dissolved, that such property shall be accounted for, and delivered up to the executor or administrator of such defendant, to be administered in due course of law. This clause in the statute was manifestly designed, rather to declare a legal consequence, than to give any new title to the property ; it was adapted to the ordinary state of things, where upon the dissolution of the attachment, the property remains that of the debtor, and the words were introduced by way of direction to all parties concerned, for the regulation of their conduct. This construction manifestly results from a due consideration of the subject matter, upon which the statute was intended to operate. An attachment constitutes a lien created by operation of law ; but a lien does not change the title to property ; it holds it responsible, provisionally, for a certain charge. But when the lien is discharged, the title to the property remains in the same state it would have been in had the lien not existed. *Bullard* v. *Dame,* 7 Pick. 239 ; *Fettyplace* v. *Dutch,* 13 Pick. 388.

Upon the next point, it appears, that the respondent, the administratrix of Allen Aldrich, had no means of collecting the debt, due to her intestate from the estate of his mother Tamar Aldrich, from any personal estate, the whole having been applied. It is conceded, that there was no means of collecting

that debt, unless the trust estate in the hands of Mr. Hastings could be made liable for it, because her personal estate had been applied and exhausted. The Court are of opinion, that as she had no legal title to the estate, it could not be sold, in the ordinary course of administration, under a license, even by her administrator. She had no authority to direct a conveyance to herself, but only to her appointee. But were this otherwise, the respondent, not being the administrator of Tamar Aldrich, could have no such license, and could execute no such power ; all she could do would be, to apply to the judge of probate to appoint an administrator *de bonis non* on the estate of Tamar Aldrich, with a view that such administrator *de bonis non*, should sell the estate, under a license. In either view of the subject therefore, the respondent could not be held to account for that item, in her administration account, as a debt which she could collect, and neglected to do so.

As to the trust estate held by Mr. Hastings, it is manifestly a case where the legal estate was in the trustee. There was no resulting trust for Tamar Aldrich, no trust being expressed in the deed. It appears that she was a married woman, divorced *a mensâ et thoro*. The estate was conveyed to Mr. Hastings at her request ; and he covenanted by deed to convey it to such person as she should in writing nominate and appoint, and in default of such appointment, to convey it to her legal heirs. She died, having made no appointment. Mr. Hastings then held the estate in trust for her three children, of whom Allen Aldrich was one. But it was an equitable and beneficial interest only. As such, he could convey and assign it. In this state of things he made an assignment, purporting to be an assignment of all his real and personal property, (excepting property exempted by law from attachment,) for the benefit of his creditors. He thereby assigns all his lands, tenements and hereditaments, goods, chattels, &c. and all his right, title, and interest in and to the same. These terms are broad enough to include this equitable interest, or *chose in action*, consisting of a right to call on Mr. Hastings to convey to him one third of the estate in question, in fee. The consideration for that assignment was a good one, and the object a meritorious one. If after the application of all the assigned

Coverdale
*v.*
Aldrich.

Coverdale
v.
Aldrich.

funds, there shall be enough to satisfy all his creditors and leave a surplus, that surplus, under the ultimate trust for the assignor, will come to his personal representative, and will then be applicable to the payment of the plaintiff's debt, and of all other debts of Allen Aldrich, not satisfied by the assignment.

*Decree of the Probate Court affirmed, and the proceedings remitted.*